IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE CASE NO.   3:17-cv-602-TBR

**MELISSA MIDDLETON**                                                                                          **PLAINTIFF**

v.

**SELECTRUCKS OF AMERICA, LLC**
**D/B/A SELECTRUCKS OF LOUISVILLE**
                                                                                                                     **DEFENDANT**

    <u>**SERVE:**</u>
    **C T CORPORATION SYSTEM**
    **306 W MAIN ST**
    **SUITE 512**
    **FRANKFORT, KY 40601**

<u>**JURY TRIAL DEMANDED**</u>

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

<u>**COMPLAINT**</u>

Comes the Plaintiff, Melissa Middleton, by counsel, and for her complaint against the Defendant, SelecTrucks of America d/b/a SelecTrucks of Louisville, states as follows:

<u>**PARTIES**</u>

1. The Plaintiff, Melissa Middleton (hereinafter referred to as "Ms. Middleton"), at all times relevant to this Complaint, was, and currently is, a resident of Shepherdsville, Kentucky. Ms. Middleton was employed for 15 years by the Defendant, Selectrucks of America d/b/a SelecTrucks of Louisville (hereinafter referred to as "SelecTrucks" or "Defendant").

2. Ms. Middleton was continuously employed with SelecTrucks until her wrongful termination on April 3, 2017.

3. Defendant, SelecTrucks, is a Delaware corporation with its principal office in South Carolina.

Its Registered Agent is CT Corporation System, to be served at 306 W. Main St., Suite 512, Frankfort, Kentucky 40601.

## JURISDICTION AND VENUE

4. As alleged, Ms. Middleton is a resident of Shepherdsville, Kentucky.

5. This Court has personal jurisdiction because SelecTrucks conducts business in Kentucky.

6. Jurisdiction is proper in the United States District Court, *inter alia*, pursuant to 28 U.S.C. § 1331, for her claims under 29 U.S.C. § 2601, the Family Medical Leave Act of 1993 ("FMLA").

7. Jurisdiction is proper in the United States District Court for the Western District of Kentucky, *inter alia*, pursuant to 28 U.S.C. § 1367, for her claims of sex discrimination and retaliation under the Kentucky Civil Rights Act, KRS 344, et seq., and the common law of the Commonwealth of Kentucky.

8. The events giving rise to Ms. Middleton's claims occurred within this judicial district and division. Therefore, venue is proper under 28 U.S.C. §1391.

## FACTS

9. SelecTrucks first hired Ms. Middleton in 2002 as an inventory controller.

10. Ms. Middleton was an exemplary employee for fifteen years, and on November 18, 2014, was hired to be General Manager of the Louisville center of SelecTrucks after going through a full interview process.

11. Ms. Middleton's duties as General Manager included overseeing the truck center, dealing and buying trucks, and managing people who reported to her. She received positive performance reviews every year.

12. Ms. Middleton tore her ACL on the job approximately a decade ago. Her ACL has deteriorated over the next 10 years.

13. Ms. Middleton took medical leave to repair her damaged ACL from approximately February 19 to June 3, 2015. Her supervisor, Perry Brunetti ("Mr. Brunetti"), took no issue with her leave.

14. Bryan Howard (hereinafter referred to as "Mr. Howard") became Director of Sales for Daimler on or about August of 2015.

15. In a meeting with all the team at SelecTrucks Mr. Howard stated he had a few "key" beliefs that the team should be aware of. These, he informed the team, included the importance of family, and the rejection of "no" for an answer; he stated there was always a way.

16. Ms. Middleton had what she, and other co-workers believed to be, a heart attack on November 3, 2015. She was rushed to the hospital for treatment.

17. At the hospital Ms. Middleton was diagnosed with gallbladder issues, as well as a nodule on her thyroid.

18. Ms. Middleton returned to work, but was told she needed to follow up with her family physician.

19. Ms. Middleton scheduled a follow up meeting with her family physician, but only after mandatory attendance at a business conference at the Headquarters of Daimler Trucks North America in Fort Mills, South Carolina.

20. At this business conference Ms. Middleton was required to present her business plan for the upcoming year to Mr. Howard and other executives.

21. In Fort Mills she met Dave Conzett (hereinafter referred to as "Mr. Conzett"), the general

manager for SelecTrucks Cleveland. Mr. Conzett expressed his concern that he would be terminated because his SelecTrucks location was losing the most money out of all the SelecTrucks locations.

22. Ms. Middleton responded that she believed this was unlikely. Due to market factors, most locations were losing money at that time.

23. "Peggy," a woman at Daimler Headquarters in Fort Mills, asked Ms. Middleton if she had worked individually with Mr. Howard yet. Ms. Middleton informed Peggy that Ms. Middleton had not.

24. Peggy told Ms. Middleton that Mr. Howard ignored female employees at the office. Peggy also informed Ms. Middleton that Mr. Howard did not greet female employees unless forced to do so, but the same was not true for male employees.

25. Ms. Middleton was supposed to present her business plan the next day for an hour and a half. However, Mr. Howard only allowed her to use approximately half of her allotted time, i.e., forty minutes. Mr. Howard was critical, frequently interrupted Ms. Middleton, and made it clear he did not want to hear what she had to say.

26. Zoltan Ferencz, a male, had been permitted to present for two hours before Ms. Middleton. John Hardman, the male who presented after Ms. Middleton was given more than a full hour and a half supposedly allotted to present. He was given so much time it made the people attending the presentation late for a scheduled dinner.

27. Ms. Middleton returned from Fort Mills and visited her doctor. On her doctor's orders, she took FMLA leave and had her gallbladder removed on or about January 26, 2016.

28. Ms. Middleton also was scheduled for thyroid surgery in late February, but she nevertheless

returned to work from FMLA on or about February 8, 2016, a mere two weeks after her gallbladder removal.

29. The day after she returned from her gallbladder surgery, on February 9, 2016, Mr. Howard placed Ms. Middleton on a Performance Improvement Plan ("PIP").

30. The PIP was issued upon Mr. Howard's orders. The PIP was supposed to "define serious areas of concern, gaps in your work performance, reiterate management's expectations, and allow you the opportunity to demonstrate improvement and commitment."

31. Ms. Middleton had never been placed on a PIP before, until February 9, 2016.

32. Following this PIP bombshell, Ms. Middleton was also forced into an hour-long meeting with Mr. Howard and Mr. Brunetti, discussing the PIP.

33. Mr. Howard insisted that all of the centers with low numbers were getting the same treatment. However, Ms. Middleton was the only general manager who was placed on a PIP at that time.

34. Even Mr. Conzett, the general manager of Cleveland SelecTrucks, who had admitted to Ms. Middleton that his center had the worst performance of all SelecTrucks centers, was not placed on a PIP. At least two other male General Managers were not placed on PIPs either.

35. Ms. Middleton took FMLA leave from February 26 to March 16, 2016, for the scheduled surgery to remove her left thyroid.

36. On July 12, 2016, Ms. Middleton sent a letter to HR stating that she needed accommodations to help her with her disabilities, which included the above-stated problems with her ACL/knee, thyroid, and gallbladder, and depression and migraines.

37. Ms. Middleton sent her accommodations request to Nickole White (hereinafter referred to as "Ms. White"), who sent out an invitation via email to Ms. Middleton to meet with Ms. White

over the proposed accommodations. Mr. Howard was carbon copied on the emails between Ms. Middleton and Ms. White.

38. Ms. Middleton told Ms. White she did not want anyone besides the two of them at this meeting to discuss her private medical information.

39. Nevertheless, Mr. Howard attended, despite Ms. Middleton's privacy request. Ms. White and Mr. Howard arrived on October 14, 2016, unannounced, to discuss the requested accommodations. However, because Ms. Middleton was going on FMLA leave, Ms. White stated they would wait until she returned to complete the discussion.

40. Ms. Middleton took a pre-approved vacation right before her medical leave. During her vacation on October 31, 2016, Ms. Middleton found out that her father had cancer. This put Ms. Middleton on the verge of a nervous breakdown.

41. Ms. Middleton had her 4th knee surgery on November 14, 2016, and was out on medical leave for the same until April 3, 2017.

42. Ms. Middleton arrived to work on April 3, 2017, at 7 a.m.; she was the first employee to arrive. Mr. Brunetti arrived around 9 a.m., and greeted her with open arms. However, Mr. Howard and Ms. White arrived just as Ms. Middleton and Mr. Brunetti were about to go to lunch together.

43. Mr. Howard read a termination letter (attached hereto as Exhibit 1) word for word to Ms. Middleton. He stated that Ms. Middleton's employees supposedly had threatened to quit if she returned to work.

44. Ms. Middleton eventually asked what would be done about her company car and Mr. Howard replied that they had ordered an Uber for her, and to leave the office immediately.

## FIRST CAUSE OF ACTION
## FMLA RETALIATION

45. Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs 1 through 44, as if fully set forth herein.

46. Ms. Middleton engaged in protected conduct each time she took leave pursuant to FMLA.

47. Mr. Howard and SelecTrucks were aware of Ms. Middleton's protected activity.

48. Mr. Howard and SelecTrucks retaliated against Ms. Middleton by placing her on a PIP when she returned from FMLA leave on February 9, 2016.

49. Mr. Howard and SelecTrucks also retaliated against Ms. Middleton by terminating her when she returned from FMLA leave on April 3, 2017.

50. Mr. Howard and SelecTrucks took these actions in violation of 29 U.S.C. § 2601.

## SECOND CAUSE OF ACTION
## SEX DISCRIMINATION

51. Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs 1 through 50, as if fully set forth herein.

52. Ms. Middleton' sex was a substantial motivating factor in Mr. Howard deciding to take the above-described adverse employment actions against her.

53. SelecTrucks discriminated against Ms. Middleton because of her sex, in violation of KRS 344.010 *et. seq.*

## THIRD CAUSE OF ACTION
## RETALIATION

54. Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs, 1 through 53, as if fully set forth herein.

55. Ms. Middleton engaged in protected activity under KRS § 344.010, *et seq.,* when she requested accommodations.

56. Ms. Middleton was terminated in close temporal proximity to her request for accommodations.

57. SelecTrucks terminated Ms. Middleton's employment for engaging in protected activity under KRS § 344.010, *et seq.,* in violation of KRS § 344.280.

## PRAYER FOR RELIEF

58. Plaintiff restates and incorporates by reference each and every allegation set forth in the foregoing paragraphs, 1 through 57, as if fully set forth herein.

59. **WHEREFORE**, Plaintiff, Melissa Middleton, prays that this Court:

    a. Declare Defendant's conduct in violation of Ms. Middleton' rights;

    b. Award Ms. Middleton compensatory damages in such amounts as shall be proven at trial for her economic and other losses, including, but not limited to, back pay, and front pay in lieu of reinstatement, to the extent Daimler's conduct has rendered reinstatement impracticable;

    c. Award Ms. Middleton damages against Defendant in an amount to be proven at trial for the embarrassment and humiliation, personal indignity, apprehension about her past, current and future economic well-being, emotional distress, and mental anguish, which have been inflicted upon Ms. Middleton by Defendant's wrongful acts;

    d.   Award Ms. Middleton pre-judgment and post-judgment interest;

    e.   Award Ms. Middleton her attorneys' fees and costs pursuant to KRS § 344; and,

    f.   Grant Ms. Middleton such further relief as this Court may deem just and proper.

## JURY DEMAND

65. Plaintiff, Melissa Middleton, demands a jury to try all issues triable by jury.

Respectfully Submitted,

s/John S. Friend
John S. Friend
Robert W. "Joe" Bishop
Tyler Z. Korus
**Bishop Korus Friend, P.S.C.**
6520 Glenridge Park Place, Suite 6
Louisville, Kentucky 40222
(502) 425-2600
COUNSEL FOR PLAINTIFF