UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MELISSA MIDDLETON                                                    Plaintiff

v.                                                  Civil Action No. 3:17-cv-602-RGJ

SELECTRUCKS OF AMERICA, LLC                                       Defendants
D/B/A SELECTRUCKS OF LOUISVILLE,
*ET AL.*

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant, Daimler North America Corporation ("DNAC") moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) [DE 105]. Defendants, SelecTrucks of America, LLC ("SelecTrucks") and Daimler Trucks North America ("DTNA") (collectively, the "Defendants") move for summary judgment [DE 107] and for leave to file excess pages [DE 106]. Plaintiff, Melissa Middleton ("Middleton") responded to the Motion to Dismiss [DE 112] and Motion for Summary Judgment [DE 111] and Defendants replied [DE 113]. Briefing is complete, and the matter is ripe. For the reasons below, the Court **GRANTS** DNAC's Motion to Dismiss [DE 105], **GRANTS** Defendants' Motion for Leave to File Excess Pages [DE 106], and **DENIES** Defendants' Motion for Summary Judgment [DE 107].

## I.    BACKGROUND

SelecTrucks is a used semi-truck retailer headquartered in Fort Mill, South Carolina. [DE 107 at 920]. SelecTrucks is wholly owned by Daimler Trucks Remarketing Corporation ("DTR"), a subsidiary of DTNA. [DE 105 at 853]. SelecTrucks employed Middleton from 2002 to 2017. [DE 39 at 38]. Initially hired as an inventory controller, Middleton was promoted in 2014 to "General Manager of the Louisville Center of SelecTrucks." [*Id.* at 385]. As General Manager,

Middleton was responsible for "overseeing the truck center, dealing and buying trucks, and managing people who reported to her." [*Id.*]. Middleton was also responsible for developing an annual business plan for the Center and presenting the plan to a senior manager at DTR at an annual meeting. [DE 107 at 921].

From February to June 2015, Middleton took approved medical leave to "repair her damaged ACL." [DE 39 at 386]. She claims that her supervisor, Perry Burnetti, took no issue with her leave. [*Id.*]. In August 2015, Bryan Howard ("Howard") became Middleton's supervisor. [*Id.*]. In January 2016, Middleton took leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, to have her gallbladder removed and returned to work two weeks later on February 9, 2016. [*Id.* at 387–88]. The next day, Howard placed Middleton on a Performance Improvement Plan ("PIP"). [*Id.* at 388]. From late-February to mid-March 2016, Middleton again took FMLA leave to have surgery on her left thyroid. [*Id.*]. In July 2016, Middleton sent a formal letter to Nickole White ("White"), Human Resources Manager for DNAC, requesting workplace accommodations to aid her disabilities, which included depression and migraines and problems with her ACL/knee, thyroid, and gallbladder. [*Id.*]. On September 29 she received a response advising that certain accommodations would be granted while others denied. [DE 111 at 1480]. White traveled to Louisville in October to personally discuss Middleton's request for accommodations. [*Id.*]. Middleton submitted another request for FMLA leave related to another knee surgery on October 25, 2016. [DE 107 at 932]. Middleton called off and used her vacation time from October 25 to the start of her FMLA leave on November 14. [*Id.* at 932–33]. Middleton's approved FMLA leave continued until April 2017. [*Id.*]. On the day Middleton returned from FMLA leave, she was terminated by Howard, in consultation with his supervisors. [*Id.* at 933].

Middleton filed suit against SelecTrucks, alleging claims of retaliation in violation of the FMLA, 29 U.S.C. § 2601, and unlawful gender discrimination and retaliation in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010. [DE 1]. In her Amended Complaint, Middleton added DNAC and DTNA as parties [DE 39] and DNAC and DTNA moved to dismiss. [DE 48]. The Court issued an order denying DNAC and DNTA's Motion to Dismiss without prejudice until Plaintiff could conduct jurisdictional discovery. [DE 58]. Now that discovery related to jurisdiction has concluded, DNAC moves to dismiss for lack of personal jurisdiction and improper venue. [DE 105]. SelecTrucks and DTNA also move for summary judgment on Plaintiff's FMLA and KCRA claims. [DE 107].

## II.   DNAC'S MOTION TO DISMISS

DNAC moves the Court to dismiss this action against it for lack of personal jurisdiction and improper venue. [DE 105]. Without objection by Plaintiff [DE 112 at 1539], DNAC's motion to dismiss is **GRANTED**.

## III.   DEFENDANTS' MOTION FOR LEAVE TO FILE EXCESS PAGES

Defendants move this Court for leave to file in excess of the 25-page limitation required by Local Rule 7.1(d). [DE 106]. Without objection, DNAC's motion to dismiss is **GRANTED**.

## IV.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Middleton's retaliation and gender discrimination claims. [DE 107]. Defendants argue that Middleton failed to meet sales goals and center expectations after several unsuccessful opportunities. [*Id.* at 921–22]. According to Defendants, Middleton has failed to produce evidence that her termination was the result of anything other than "her uniquely poor performance" [*Id.*].

3

## A.  Standard of Review

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion.  *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party.  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  But the nonmoving party must do more than show some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### B. Analysis

#### 1. Defendants' Objection to Middleton's FMLA Retaliation Action.

A plaintiff may establish a claim of FMLA retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Products, Inc*., 515 F.3d 531, 543 (6th Cir. 2008). Without direct evidence of retaliation, the Court must apply the *McDonnell Douglas* discrimination burden-shifting framework to analyze retaliation claims at the summary judgment stage. *Skrjanc v. Great Lakes Power Serv. Co*., 272 F.3d 309, 313 (6th Cir. 2001) (applying *McDonnell Douglas* burden-shifting framework to FMLA retaliation claim). The burden-shifting framework requires the plaintiff to put forth a *prima facie* case. *See McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts back to the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* Finally, the burden shifts back to the plaintiff to establish that the employer's justification for the adverse employment action was pretextual. *See id.* at 804.

To support her claim of FMLA retaliation, Middleton cites the timing of her termination in conjunction with her use of intermittent FMLA leave, comments made to Middleton by her supervisor Howard, and the difference in disciplinary treatment between Middleton and similarly situated general managers for the same failure to meet sales goals. [*See* DE 39, 107]. The parties both adopt the *McDonnell Douglas* burden-shifting framework in their arguments. [DE 107 at 9351; DE 111 at 1489]. Because Middleton offers only circumstantial evidence of retaliation, the Court analyzes her claim under the *McDonnell Douglas* framework.

       *i.*   Prima Facie *Case*

To establish a *prima facie* claim for FMLA retaliation, Middleton must show that (1) she was an eligible employee for FMLA benefits, (2) she knew that she was exercising her rights under the FMLA, (3) after learning of Middleton's exercise of her FMLA rights, Defendants took an employment action adverse to her, and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If Middleton establishes a *prima facie* case of retaliation, the burden shifts to Defendants to present a legitimate, nondiscriminatory reason for their adverse employment action. *Id.* At the summary judgment stage, once a legitimate, nondiscriminatory reason has been articulated, Middleton must provide the Court with evidence from which a jury could conclude that Defendants' nondiscriminatory reason for their actions are a pretext for unlawful discrimination. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

Defendants argue that Middleton cannot establish the third or fourth elements of her *prima facie* case. [DE 107 at 935]. As for the third element, Middleton claims that Defendants retaliated against her by placing her on a PIP in February 2016. [DE 39 at 390]. Defendants argue that Middleton's PIP does not constitute a materially adverse employment action. [DE 107at 935–36]. Courts in this District have held a PIP that ultimately leads to termination may constitute and adverse employment action that could prove retaliation. *See Johnson v. Board of Educ. of the Bowling Green Indep. Sch. Dist.*, 537 F.Supp.3d 922, 931–32 (W.D. Ky 2021) (citing *Keys v. Humana, Inc.*, No. 3:09-cv-834-CRS, 2010 WL 291186, at \*3 (W.D. Ky. July 26, 2010) *rev'd on other grounds* 684 F.3d 605 (6th Cir. 2012)). It is undisputed that Defendants placed Middleton on a PIP and eventually terminated from her employment. [DE 107 at 935]. Because Middleton's PIP eventually led to her termination in April 2017, a reasonable jury could find that the PIP

constituted an adverse employment action.  *See Johnson v. Board of Educ. of the Bowling Green Indep. Sch. Dist.*, 537 F.Supp.3d at 931–32.

Defendants argue that the Sixth Circuit has precluded a PIP from constituting a materially adverse employment action.  [DE 107 at 936].  Yet the Sixth Circuit merely held that a PIP does not constitute an intolerable condition that would have amounted to a constructive discharge.  *See Agnew v. BASF Corp.*, 286 F.3d 307.  In accordance with this Court's prior decisions, a reasonable jury may find a PIP resulting in termination constitutes an adverse employment action.

As for the fourth element of Middleton's *prima facie* case, the parties dispute whether a causal connection between Middleton's termination and her FMLA leave may be inferred from the temporal proximity between the two events.  The Sixth Circuit has held that "temporal proximity alone is sufficient to establish a prima facie case of FMLA retaliation." *Krumheuer v. GAB Robins N.A., Inc.* 484 Fed. App'x. 1, 5 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).  "[T]he more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereeke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). The parties disagree about whether temporal proximity should be judged at the time the employer learns of the employee's FMLA leave or when the employee returns from FMLA leave.  The Sixth Circuit has used both points in time to judge temporal proximity, forcing the Court to examine the underlying facts.

Defendants cite *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 452 (6th Cir. 2017) for the proposition that temporal proximity should be judged at the time the employer learned

about Middleton's FMLA leave and her termination. [DE 107 at 936]. In *Bush*, a client of Bush's employer requested that Bush be removed. *See* 683 F. App'x at 452. Based on this request, Bush's employer had already made the decision to terminate Bush four days prior to his request for FMLA leave. *See id.* Because the decision to terminate Bush was made prior to the employer's knowledge of Bush's FMLA leave, the relevant timeframe to consider in determining whether there was a causal connection between Bush's FMLA leave and his termination was the time after his employer learned of a protected activity.[1] *See id.*

Middleton cites *Wallner v. Hillard*, 590 F. App'x 546, 554 (6th Cir. 2014) and argues that the Court should look to Middleton's date of termination to determine whether there was a causal connection between her termination and FMLA leave. In *Wallner*, the Sixth Circuit held that "if merely asking for FMLA leave is a protected activity, then surely actually taking the time off is, as well." *Id.* Wallner exercised her right to take FMLA leave but was terminated nine days after her return to work. *Id.* The Sixth Circuit held that "[t]he temporal proximity that is relevant to Wallner's FMLA retaliation claim, therefore, is the length of time between when she was absent from work on FMLA leave and when she was discharged." *Id.*

The facts surrounding Middleton's FMLA leave and termination more closely resemble *Wallner* than *Bush* or *Skrjanc*. As in *Wallner*, Middleton actually took her FMLA leave. *See* 590 F. App'x at 554. Although Middleton was placed on a PIP prior to her FMLA leave, there is no indication that Defendants had made a formal decision to terminate Middleton prior to her leave. Howard testified that the reason for terminating Middleton on her first day back to work was because this was the first opportunity Defendants had to address the issue with Middleton. [DE

---

[1] The Sixth Circuit came to a similar conclusion in *Skrjanc*, 272 F.3d at 309. In *Skrjanc*, the employee was terminated before he was able to take the requested FMLA leave. *See id.* at 317. As a result, the Sixth Circuit held that "the better-reasoned approach looks instead to the date on which the employee requests FMLA leave." *Id.*

8

107-4, Howard Dep. at 159:18–22]. That said, the record indicates that Middleton met with White and Howard in the weeks preceding her approved FMLA leave to discuss workplace accommodations. *See* [DE 107-1, Middleton Dep. at 218:12–220:13]. This suggests that the decision to terminate Middleton was not made until after she took her approved FMLA leave in November 2016. By taking her approved FMLA leave, Middleton was engaged in a protected activity. *See Wallner*, 590 F. App'x at 554. Because the activity was protected, the relevant timeframe to consider in determining whether there was a causal connection between Middleton's FMLA leave and her termination was the time after she returned to work in April 2017. *Id.* Middleton was terminated on the same day she returned to work from FMLA leave. The close proximity between her termination and return from FMLA leave establishes a *prima facie* case for retaliation. *See Krumheuer v. GAB Robins N.A., Inc.* 484 Fed. App'x. 1, 5 (6th Cir. 2012).

### ii. Legitimate, Nondiscriminatory Reason

The next step in the *McDonnell Douglas* analysis shifts the burden back to Defendants to set forth a legitimate, nondiscriminatory reason for terminating Middleton's employment. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). This step is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Defendants have provided a legitimate reason for terminating Middleton—her poor performance. Defendants explain that Middleton developed the business plan for her facility, but the facility failed to meet even 50% of its sales goals for seven of the last 8 months before Middleton was placed on a PIP. [DE 107 at 924]. The lack of sales directly resulted in the location's poor financial performance. [*Id.*]. Defendants also claim that Middleton failed to maintain appropriate inventory and failed to participate in meetings or submit reports. [*Id.*]. As a

result, Middleton was graded as "Inconsistent" on her annual performance review. [*Id.* at 923]. Defendants cite a deposition by Middleton's supervisor, Howard, and her PIP in support of their claims. [*Id.* at 923–24]. Thus, Defendants have met their burden of articulating a legitimate, nondiscriminatory reason for terminating Middleton's employment.

### iii. Pretext

Because Defendants articulated a legitimate, nondiscriminatory reason for firing Middleton, the burden finally shifts back to Middleton to "prove, by a preponderance of the evidence, that [SelecTrucks'] proffered reason is pretextual." *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 Fed. App'x 404, 413 (6th Cir. 2012). A plaintiff can prove pretext by showing that the proffered reason (1) is baseless, (2) "did not actually motivate the employer's conduct, or (3) . . . [is] insufficient to warrant the challenged conduct." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005). "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021). However, if an "employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw*, 576 F.3d at 586.

Middleton argues that Defendants' proffered justification was pretextual based on the temporal proximity between her FMLA leave and the adverse employment actions. [DE 111 at 1491]. Middleton notes that she was placed on a PIP the day after she came back from FMLA leave in February 2016 and terminated the same day she returned to work from FMLA leave in April 2017. [*Id.*]. Middleton also submitted evidence that her center's underperformance may be

10

contributed to market factors as opposed to her inability to manage. Middleton submitted an affidavit from Ms. Yarbrough suggesting that the Louisville market was seasonal and more challenging than Howard recognized. [DE 111-2, Yarbrough Aff. 2]. Finally, Middleton points to deposition testimony that suggests her FMLA leave may have been considered when Defendants decided to terminate her employment. *See* [DE 107-6, Backeberg Dep. 49:10–50:10]. The evidence submitted by Middleton may allow a reasonable jury to find that Defendants' justification was pretextual. *White*, 429 F.3d at 245. At this stage, Middleton has submitted sufficient evidence to meet the less weighty burden to survive Defendants' Motion for Summary Judgement. *Strickland*, 995 F.3d at 513. Defendants' Motion for Summary Judgment on Middleton's FMLA retaliation claim is **DENIED**.

### 2. Defendants' Objection to Middleton's KCRA Gender Discrimination Claim.

The KCRA prohibits discrimination "against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex[.]" KRS 344.040(1)(a). Kentucky has borrowed the burden-shifting approach from *McDonnell Douglass*, which was similarly applied in Middleton's FMLA retaliation cause of action.

#### i. Prima Facie *Case*

The parties cite separate standards that Middleton must meet to establish her *prima facie* case. In their objection, Defendants cite *Commonwealth v. Solly*, 253 S.W.3d 537, 541 (Ky. 2008) and argue that Middleton must show that "(1) she is a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she was subject to some adverse employment action, and (4) that a similarly situated individual outside of her protected class was treated more favorably." [DE 107 at 944]. However, Middleton argues that she will prove her *prima facie* case under the "replacement test." [DE 111 at 1484]. The replacement test requires Middleton to show

11

that she "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from with [she was] discharged, and (4) was replaced by a person outside of the class." *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 719 (Ky. 2020) (citing *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492 (Ky. 2005)).

Defendants do not address the tests in their Reply or object to Middleton's use of the replacement test.  [DE 113].  Based on the facts, Middleton can satisfy her burden to establish a *prima facie* case under the replacement test.  It is undisputed that Middleton was part of a protected class, she was discharged from her position at SelecTrucks, and she was replaced by a person outside the class.  Middleton has also submitted evidence that she was qualified to be general manager of the Louisville SelecTrucks location.  She spent nine years in Defendants' finance department, attended finance and insurance school, obtained a finance certification, and worked for a decade in auto sales.  [DE 111 at 1484–85].  Based on the evidence submitted, Middleton may establish her *prima facie* case under the replacement test.

### ii.  Legitimate, Nondiscriminatory Reason

The next step in the *McDonnell Douglas* analysis shifts the burden back to Defendants to set forth a legitimate, nondiscriminatory reason for terminating Middleton's employment. *Upshaw*, 576 F.3d at 585.  Defendants easily meet this burden because they argue that the reason for Middleton's termination was her underperformance.  [DE 107 at 946].

### iii.  Pretext

Because Defendants articulated a legitimate, nondiscriminatory reason for Middleton's termination, the burden shifts back to Middleton to prove that the reason was pretextual.  *See McDonnell Douglas*, 411 U.S. at 804.  Kentucky uses the same test to establish pretext as required for Middleton's FMLA action.  *See Hughes v. Norton Healthcare, Inc.*, No. 2019-CA-0222-MR,

2020 WL 7295290, at *12 (Ky. Ct. App. Dec. 11, 2020).  Middleton need only establish that a reasonable jury could conclude the Defendants' reason for terminating her was pretextual. *Strickland*, 995 F.3d at 513.

Defendants argue that Middleton cannot prove pretext because the only evidence she can produce is her own subjective belief that her termination was pretextual.  [DE 107 at 946–47].  In turn, Middleton argues that she can prove pretext based on the treatment of similarly situated male employees [DE 111 at 1486] and evidence of that her termination was not based on her poor performance.  [*Id.* at 1488].  Middleton testified that another center manager, David Conzett ("Conzett"), was not meeting expectations under his business plan.  *See* [DE 107-1, Middleton Dep. 195:22–196:8].  Howard testified that Conzett's center was underperforming, but Howard did not put Conzett on a PIP or terminate him for poor performance.  *See* [DE 107-4, Howard Dep. 50:22–51:8].  Middleton submitted excerpts from Wanda Yarbrough's deposition that suggest Howard would allow similarly situated center managers to modify their sales goals but would not allow Middleton to do the same.  *See* [DE 111-1, Yarbrough Dep. 84:3–16].

Middleton compares her situation to *Strickland*, a case in which the Sixth Circuit held that an adverse employment action was pretextual because a similarly situated employee was not subject to the same adverse employment action for the same conduct.  995 F.3d at 515.  In *Strickland*, an employee in a protected class was terminated for failing to complete an activity log. *See id.* at 512.  Another employee in a different office with a different position had also failed to fill out an activity log, but that employee was neither investigated nor charged.  *See id.*  The plaintiff had testified that employees were required to fill out activity logs regardless of the exact position and office.  *See id.*  The Sixth Circuit held that plaintiff's testimony established that employees must fill out activity logs and differences between the employees' positions were

13

matters for the jury to decide, not the Court.  *Id.*  Middleton and Conzett may not have been in the same office, but they both were center managers.  Therefore, there may be more similarities between Middleton and Conzett than between the employees in *Strickland*.  It is also undisputed that Middleton and Conzett both failed to meet sales goals but only Middleton was terminated.  As a result, a reasonable jury may be able to find that Defendants' reason for terminating Middleton was pretextual.  Defendants' Motion for Summary Judgment on Middleton's KCRA gender discrimination claim is **DENIED**.

### 3.    Defendants' Objection to Middleton's KCRA Retaliation Claim.

Middleton claims that she was terminated in retaliation for seeking accommodations for her disabilities.  Defendants object, arguing that Middleton cannot establish her *prima facie* case or pretext for her termination.  Under Kentucky law, it is unlawful "[t]o retaliate or discriminate in any manner against a person because she has opposed a practice declared unlawful by this chapter."  KRS 344.280(1).    An "employer" may not "discriminate against an individual . . . because of the individual's . . . disability."  *Id.* at 344.030(2).  Like the FMLA analysis, Kentucky follows the *McDonnell Douglass* burden shifting approach for retaliation claims.  *See Benningfield v. Fields*, 584 S.W.3d 731, 739 (Ky. 2019).

#### i.   *Applicability of the KCRA to Defendants*

For the purpose of disability discrimination claims, the KCRA limits the definition of an "employer" to entities with fifteen or more employees in the state.  KRS 344.280(1).  Defendants assert that the Court's application of the KCRA runs afoul of the Constitution.  [DE 107 at 951–53].  Yet the Sixth Circuit has already ruled on this issue in *Lewis v. Quaker Chem. Corp.*, No. 99-5405, 2000 WL 1234356, at *6 (6th Cir. Aug. 24, 2000).  In *Lewis*, the Sixth Circuit held that disability discrimination claims under the KCRA "reach employees engaged in commerce but not

necessarily located within the state of Kentucky." *Id.* Defendants cite *Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 191–93 (Ky. 2001) to argue that holding otherwise would give the KCRA extra-judicial application. [DE 107 at 953]. But the facts in *Barnhardt* are distinguishable. In *Barnhardt*, the plaintiff lived and worked in Alabama and South Carolina during his term of employment, while his employer was incorporated in New York with its headquarters in Kentucky. *See* 50 S.W.3d at 190. Barnhardt was seeking to apply the KCRA to a cause of action that matured while living and working outside Kentucky. *Id.*

It is undisputed that Middleton was employed in Kentucky when her cause of action under the disability discrimination portion of the KCRA arose. This case fits well within the purpose of the KCRA. *See Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 851 (Ky. 2016) ("The general purpose of the KCRA is to 'safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability.'"). For these reasons, Middleton may count SelecTrucks' out-of-state employees to meet the KCRA's employee-minimum.

### ii. Prima Facie *Case*

To establish a *prima facie* case for retaliation, a plaintiff must prove "(1) that the plaintiff engaged in a protected activity; (2) the defendant knew that the plaintiff engaged in that activity; (3) thereafter, defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.* at 851–52. The plaintiff bears the initial burden to prove that engaging in the protected activity "was a 'substantial and motivating factor' in the [employer's] decision to terminate." *Benningfield*, 584 S.W.3d at 739 (citing *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. App. 2006)).

15

A plaintiff may establish their case through circumstantial evidence. *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 804 (Ky. 2004).

Defendants do not dispute that Middleton engaged in a protected activity. Defendants do contend that Howard was unaware of Middleton's request for accommodations at the time he decided to terminate Middleton. [*Id.*]. But Howard was not the only person employed by Defendants who was involved in Middleton's termination. White initially denied Howard's first attempt to terminate Middleton in July 2016 but granted Howard's second request while Middleton was out on FMLA leave in in 2017. *See* [DE 119-1, White Dep. 39:8–41:1]. As a result, White had knowledge of Middleton's request for accommodations and was involved in the termination process.

Defendants also argue that Middleton has failed to prove causation because there is not a close proximity between the adverse employment action and her protected activity. [DE 107 at 948]. The Kentucky Supreme Court has recognized that causation may be established if the decisionmaker is aware of the protected activity and there is a close temporal relationship between the protected activity and the adverse action. *Brooks*, 132 S.W.3d at 804 (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)). The Sixth Circuit has held that less temporal proximity between the adverse employment action and the employer's knowledge requires more evidence of causation. *See Nguyen v. Cty. of Cleveland*, 229 F.3d 559, 566–67. In most cases, a plaintiff must demonstrate temporal proximity of less than six months to establish causation. *See Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997).

A reasonable jury could conclude that Middleton can prove the temporal proximity necessary to demonstrate causation. Middleton requested her disability accommodations in July 2016. [DE 111 at 1480]. Although there was nearly a nine-month gap between when Defendants

learned of Middleton's request for accommodations and her termination in April 2017, Middleton was on FMLA leave or approved vacation for approximately five of those months. [DE 107 at 933, 950]. Excluding Middleton's FMLA leave, there was roughly only four months between Middleton's request for accommodations and her termination. *See Parnell*, 1997 WL 271751, at *3. Moreover, Middleton requested accommodations in July 2016 but did not receive a response until September 29. [DE 111 at 1480]. Nearly three months passed before Middleton received a response from White regarding her requested accommodations. [*Id.*]. Shortly after Middleton's requests were addressed in person, Middleton left for her approved vacation and FMLA leave and was on leave until her termination in April 2017. [*Id.*].

Middleton cites *Brooks* to argue that she may prove causation by examining the full context of the case and the events that transpired between her request for accommodations and her termination. [*Id.* at 1494]. In *Brooks*, there was approximately a four-month gap between the protected activity and the adverse employment action. 132 S.W.3d at 804. Similar to *Brooks*, Middleton is within the six-month timeframe to establish causation once her approved FMLA leave is excluded. *See Parnell*, 1997 WL 271751, at *3. Based on the circumstances surrounding Middleton's request for ADA accommodations, a reasonable jury could find causation.

### iii. *Legitimate, Nondiscriminatory Reason*

The next step in the *McDonnell Douglas* analysis shifts the burden back to Defendants to set forth a legitimate, nondiscriminatory reason for terminating Middleton's employment. *Upshaw*, 576 F.3d at 585. Again, Defendants easily meet this burden because they argue that the reason for Middleton's termination was her underperformance. [DE 107 at 950–51].

*iv. Pretext*

Because Defendants articulated a legitimate, nondiscriminatory reason for Middleton's termination, the burden shifts back to Middleton to prove that the reason was pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Hughes*, 2020 WL 7295290, at *12 (holding that Kentucky applies the same burden-shifting approach used by the Sixth Circuit). Middleton need only establish that a reasonable jury could conclude the Defendants' reason for terminating her was pretextual. *Strickland*, 995 F.3d at 513.

Defendants argue that Middleton has failed to produce evidence that her request for ADA accommodations was the true motivation behind her termination. [DE 107 at 950]. They claim that the record demonstrates that Middleton's termination was a calculated business decision. [*Id.* at 950]. However, Middleton argues that there is ample evidence in the record to suggest her termination was pretextual. [DE 111 at 1495]. Middleton testified that Howard frequently complained about Middleton's disabilities and refused to accommodate. [DE 107-1, Middleton Dep. 94:5–96:15, 100:4–16]. As previously discussed, Middleton's burden to demonstrate pretext and overcome Defendants' motion for summary judgment is not weighty. *See Strickland*, 995 F.3d at 513. Middleton has put forward evidence that Defendants' reason for her termination may have been pretextual and based on her request for ADA accommodations. This presents a material issue of fact that a reasonable jury could find in Middleton's favor. Defendants' Motion for Summary Judgment on Middleton's KCRA retaliation claim is **DENIED**.

## V.     <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.     DNAC's Motion to Dismiss for lack of personal jurisdiction and venue [DE 105] is **GRANTED**;

2.     SelecTrucks and DNTA's Motion for Leave to Exceed the Page Limit [DE 106] is **GRANTED**;

3.     SelecTrucks and DTNA's Motion for Summary Judgment [DE 107] related to Middleton's FMLA retaliation claim is **DENIED**;

4.     SelecTrucks and DTNA's Motion for Summary Judgment [DE 107] related to Middleton's KCRA gender discrimination claim is **DENIED**;

5.     SelecTrucks and DTNA's Motion for Summary Judgment [DE 107] related to Middleton's KCRA retaliation claim is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

February 4, 2022


Copies to:     Counsel of record